## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STATE FARM FIRE AND CASUALTY** | : | **CIVIL ACTION** |
| **COMPANY** | : | |
| | : | |
| **v.** | : | **NO. 18-3956** |
| | : | |
| **STEPHANIE MOTTA, *et al.*** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                      **December 11, 2018**

High school student Julia Morath died by suicide within a couple days of her classmate
Zach Trimbur attacking her health, appearance, cutting and sexual history in a text message.
Though school administrators suspended the Trimbur boy and his parents promised to supervise
him, he continued harassing Julia Morath before her death by suicide. Julia Morath's parents now
seek damages in Pennsylvania state court from the Trimbur boy and his parents alleging negligence
caused their daughter's death by suicide.

The Trimbur boy and his mother asked their homeowner insurer to defend and indemnify
them in state court. The insurer contractually agreed in the homeowner's insurance policy to
provide a defense to a suit arising from an "occurrence," defined as an "accident" under
Pennsylvania Law. The insurer argues because the Trimbur boy sent the text message, there is no
"accident," at least as to him. The Trimbur boy counters Pennsylvania law requires we consider
the foreseeability of the injury from his perspective, and while he cannot dispute sending the text
message, Julia Morath's death by suicide constituted an extraordinary intervening event is far
beyond anything contemplated in the text message and unforeseeable to him. The parties have not
cited, and we cannot find, Pennsylvania law addressing whether the Trimbur boy's alleged

negligence possibly leading to this ever more prevalent tragedy among our students is an occurrence mandating coverage.

But Pennsylvania courts have defined the underlying principles. And when we carefully examine the principles underlying coverage for "accidents" under Pennsylvania law, we hold the insurer must defend the Trimbur boy in the underlying state court case because the negligence claim against him falls within the scope of the "occurrence" language in the insurer's homeowners' policy.

## I. Background[1]

### A. Zach Trimbur's conduct before Julia Morath's death by suicide.

Before April 7, 2017, high school student Zach Trimbur "harass[ed], bull[ied], and/or cyberbull[ied]" an unnamed classmate, Jane Doe.[2] Unnamed high school administrators informed Zach Trimbur's parents, Walter Trimbur and Stephanie Motta, of their son's troubling behavior.[3] Walter Trimbur and Stephanie Motta "assured" the administrators they would "supervise, discipline, and/or control their son."[4] They "ensure[d]" the school administrators their son "would not engage in similar behavior in the future."[5]

Despite those assurances, Zach Trimbur continued his conduct. At some unspecified time "in the days before April 7, 2017," Zach Trimbur texted his classmate Julia Morath:

That's ok with me, so go back to your hellhole of a home and sit in your room and let some more guys come and penetrate you as you desperately reach out for any attention you can grasp because you are afraid of everything and anything. No one cares about your health issues and how you are an anorexic, bulimic, receding hairline cunt who goes home and cuts herself every night to cope with the fact that guys will only ever do anything with you due to the fact that you are easy and that your own mother doesn't even love you. So then you have to go back to a hospital with all of your other freak show disabled people that don't know how to stick a piece of food in there [sic] mouths. You claim to cut people off but no one cares about you enough to give a shit. Also you should probably work better on covering up your scars located on EVERYWHERE on your fucking body because they make you look more repulsive than you already do. Best regards,[6]

2

Julia Morath felt "distraught with severe mental and emotional pain and suffering."[7] She showed the text message to her parents who then informed school administrators of the message on April 6, 2017.[8] The high school suspended Zach Trimbur the same day.[9] Neither his parents nor his suspension prevented Zach Trimbur from continuing his behavior. He allegedly "continued to harass, bully, and/or cyberbully" Julia Morath after his suspension.[10] Julia Morath died by suicide on April 7, 2017.[11]

## B. Julia Morath's parents sue Zach Trimbur and his parents in state court, and State Farm seeks a declaratory judgment it has no duty to defend Zach Trimbur.

The Montgomery County, Pennsylvania Register of Wills granted Kurt and Stephanie Morath Letters of Administration for the Estate of their deceased daughter on July 26, 2017.[12] They are the beneficiaries of their daughter's estate.[13] The Moraths then sued Zach Trimbur and his parents in state court alleging negligence, wrongful death, and survival.[14] Stephanie Motta sought coverage under her insurer State Farm's homeowners policy providing her and other defined "insured[s]" personal liability coverage, subject to definitions and exclusions.[15] State Farm is currently defending Ms. Motta and her son in the state court action under a reservation of rights.[16]

While presently defending the claim, State Farm filed this case seeking a declaratory judgment it has no duty to defend or indemnify the Trimbur boy in the underlying state court case.[17] State Farm seeks judgment because "[t]he alleged bodily injury sustained by Julia Morath did not arise from an 'occurrence'"—i.e., an "accident"—triggering coverage under the policy, because Zach Trimbur's "harassment, bullying and cyber-bull[y]ing is inherently non-accidental

3

in nature."[18] Zach Trimbur, through his parents, asks we declare State Farm has a duty to defend and indemnify him.[19]

State Farm moved for judgment on the pleadings[20] and/or summary judgment.[21] Zach Trimbur, through his parents, opposes State Farm's motion and cross-moves for judgment on the pleadings. After considering the parties' motions and responses, and after helpful oral argument, we grant Zach Trimbur's motion for judgment on the pleadings and deny State Farm's motion.

## II. Analysis

The parties properly invoke our diversity jurisdiction, requiring we apply federal procedural law and Pennsylvania substantive law governing the interpretation of insurance contracts.[22] The parties argue our decision turns on a single question of law: is Julia Morath's death by suicide an "occurrence," defined as an "accident," triggering State Farm's duty to defend under Pennsylvania law? We find these events constitute an "occurrence" and State Farm must provide a defense to Zach Trimbur under the Policy.

An insurer's duty to defend "requires the insurer to cover the costs of defending the insured against a lawsuit."[23] In Pennsylvania, like many states, "[a]n insurer's duty to defend an insured in litigation is broader than the duty to indemnify, in that the former duty arises whenever an underlying complaint may potentially come within the insurance coverage."[24] We determine whether an insurer has a duty to defend "by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint."[25] Under Pennsylvania's "four corners" rule, we must limit our analysis solely to the underlying complaint itself and the terms of the insurance policy.[26]

If, after conducting this analysis, we conclude even "a single claim in [this] multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that

4

the underlying plaintiff could recover on a covered claim."[27] We may conclude State Farm has no duty to defend only if "it is apparent on the face of the [underlying] complaint that none of the injuries fall within the purview of the insurance policy."[28] With these principles in mind, we turn now to the Policy's relevant language.

## A. A precondition to personal liability coverage under Policy is an "occurrence," defined as an "accident."

Under the Policy, personal liability coverage is triggered only when the claim or suit for "bodily injury or property damage to which this coverage applies [is] caused by an *occurrence*."[29] "Occurrence," State Farm argues, is the operative term. The Policy defines an "occurrence" as "an *accident*, including exposure to conditions, which first results in: a. bodily injury; or b. property damage; during the policy period."[30] The Policy does not define the term "accident."

The Policy considers as "one occurrence" "[a]ll bodily injury and property damage resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions."[31] The Policy defines "body injury" as "physical injury, sickness, or disease to a person," including "required care, loss of services and death resulting therefrom."[32] Expressly excluded from the definition of "bodily injury" are "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person."[33] The Policy defines "property damage" as "physical damage to or destruction of tangible property, including loss of use of [the insured] property."[34]

## B. The Moraths sue Zach Trimbur and his parents for negligence, wrongful death, and survival in Pennsylvania state court.

The Moraths, in their individual capacities and as co-administrators of their daughter's estate, sue Zach Trimbur for negligence, wrongful death, and survival. They allege Zach Trimbur's conduct was "unreasonable, negligent, grossly negligent, careless, and reckless and [he]

5

intentionally breached his duty to exercise due care generally" and in various particular respects, including, among other thing, his "fail[ure] to use his cell phone in a reasonable manner," his failure to cease his conduct after his suspension from school, and acting "with a reckless disregard to Julia Morath's health and safety."[35]  The Moraths also allege Zach Trimbur acted "wanton[ly] and willful[ly]."[36]  They seek damages relating to the "large and various expenses for the funeral, burial and estate administration expenses for which [they] are entitled,"[37] as well as a variety of other damages, including the loss of Julia Morath's future earning capacity.[38]

## C.     State Farm must defend Zach Trimbur because the underlying negligence claim falls within the scope of the Policy.

State Farm argues it has no duty to defend Zach Trimbur because a prerequisite to coverage under the Policy is an "occurrence," defined in relevant part as an "accident," and Pennsylvania courts hold similarly tortious acts do not contain the degree of fortuity inherent in the meaning of "accident."  State Farm emphasizes we must focus our analysis on the underlying act itself—not the chain of consequences flowing from it.   Applying this focus on the insured's act alone, State Farm argues Zach Trimbur intentionally cyberbullied and harassed Julia Morath, and thus no "accident" occurred triggering coverage.  Zach Trimbur counters State Farm focuses too narrowly on the intentionality of the act; intentional acts can, and often do, have unintended consequences, and Pennsylvania courts accordingly consider whether an insured could have reasonably foreseen the resulting injury.  Applying this focus on the fortuity of the result, Zach Trimbur argues Julia Morath's death by suicide was an extraordinary intervening event unforeseeable to him.

### 1.     State Farm misplaces its reliance on Pennsylvania decisions holding faulty workmanship claims do not arise from an "accident."

Directing our focus to the Trimbur boy's text message, State Farm argues the Pennsylvania Supreme Court's decision in *Kvaerner Metals Division of Kvaerner, U.S., Inc. v. Commercial*

6

*Union Insurance Company*, and its progeny, bar us from considering the insured's intent to cause the resulting injury.[39] The Pennsylvania Supreme Court held in *Kvaerner* "the definition of 'accident' . . . cannot be satisfied by claims based upon faulty workmanship."[40] *Kvaerner* stemmed from a contract dispute between Kvaerner and Bethlehem Steel Corporation. Kvaerner contracted to design and construct a "coke oven battery" for Bethlehem Steel; Kvaerner agreed to build it "according to certain plans and specifications," "warranted that its materials, equipment, and work would be free from defect," and also "agreed to repair or replace any defective work or materials."[41] Despite these terms, Bethlehem Steel alleged "the Battery built by Kvaerner was damaged and did not meet the contract specifications and warranties, or the applicable industry standards for construction" and "although it sent Kvaerner a non-performance list detailing the Battery's damages and breaches, Kvaerner had failed to remedy the Battery's problems."[42]

Bethlehem sued Kvaerner, and Kvaerner sought defense and indemnity from its insurer, National Union.[43] After National Union denied coverage, defense, and indemnity, Kvaerner sued National seeking a declaratory judgment the insurance company had a duty to defend and indemnify.[44] The trial court found National Union had no duty to defend because the property damage did not result from an accident.[45] The Pennsylvania Superior Court looked outside the complaint to an expert's report showing the battery's damage could have resulted from various causes; the court reversed the trial court, finding a genuine issue of material fact regarding the cause of Bethlehem Steel's damages.[46] The Pennsylvania Supreme Court first found error in the superior court "looking beyond the allegations raised in Bethlehem's [c]omplaint to determine whether National Union had a duty to defend Kvaerner" because "the well-established precedent of this Court requir[es] that an insurer's duty to defend and indemnify be determined solely from the language of the complaint against the insured."[47] With its analysis properly focused on the

7

four corners of the underlying complaint and the operative policy language, the court examined the "ordinary usage" of the term "accident," which the policy did not define.[48]

"Accident," the Pennsylvania Supreme Court found, quoting Webster's II New College Dictionary 6 (2001), is "'[a]n unexpected and undesirable event,' or 'something that occurs unexpectedly or unintentionally.'"[49] The supreme court emphasized "[t]he key term in the ordinary definition of 'accident' is 'unexpected.'"[50] Unexpected, the supreme court held, "implies a degree of fortuity that is not present in a claim for faulty workmanship."[51] The supreme court emphasized "[t]o hold otherwise would be to convert a policy for insurance into a performance bond," and "[w]e are unwilling to do so, especially since such protections are already readily available for the protection of contractors."[52]

State Farm also relies on *Millers Capital Insurance Co. v. Gambone Brothers Development Co.*,[53] in which the Pennsylvania Superior Court, applying *Kvaerner*, rejected an insured real estate firm's attempt to distinguish *Kvaerner* by arguing the underlying claims against it "do not merely involve claims for faulty workmanship that led to the failure of the stucco exteriors but also involve claims for ancillary and accidental damage caused by the resulting water leaks to non-defective work inside the home interiors."[54] The insured argued the unexpected results constitute an accident. The Pennsylvania Superior Court rejected this argument, finding it foreclosed by the Pennsylvania Supreme Court's decision in *Kvaerner*. In *Kvaerner*, "the [c]ourt suggested that natural and foreseeable acts, such as rainfall, which tend to exacerbate the damage, effect, or consequences caused *ab initio* by faulty workmanship also cannot be considered sufficiently fortuitous to constitute an 'occurrence' or 'accident' for the purposes of an occurrence based CGL policy."[55] Such a notion, the Pennsylvania Superior Court held, "is consistent with this Commonwealth's longstanding notion of legal and proximate causation in tort law."[56]

8

State Farm reads this line of authority as foreclosing focus on the policyholder's "intent to cause the result of the conduct."[57] But we do not read *Kvaerner* and other faulty workmanship claims as sweeping so broadly. In bodily injury claims, as we describe further below, Pennsylvania courts may consider the foreseeability of the resulting injury especially when the alleged harm arises from a third-party actor after the insured's conduct.

## 2. Bodily injury directly caused by the insured's intentionally tortious conduct is not an "accident."

Turning to authority dealing with bodily injury claims, State Farm relies on cases holding intentional, physically assaultive conduct is not an "accident" triggering coverage. We agree with State Farm to this extent. The Pennsylvania Supreme Court's oft-cited decision in *Gene's Restaurant, Inc. v. Nationwide Insurance Co.*[58] is illustrative of the principle claims for assault do not arise from an accident. Nationwide, Gene's Restaurant, Inc.'s insurer, refused to defend the restaurant "against a complaint in trespass alleging the willful and malicious assault and beating of one of its patrons."[59] The policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."[60] The Pennsylvania Supreme Court held the insurer had no duty to defend the restaurant, finding "[t]he willful and malicious assault alleged in the complaint is not an accident but rather is an intentional tort" not covered under the policy.[61]

Judge Jones applied the same reasoning in *State Farm Fire and Casualty Company v. Scalia*, in which State Farm sought a declaratory judgment it had no duty to defend or indemnify its policyholder in a personal injury action for an alleged assault and battery. The victim in the underlying case alleged State Farm's policyholder "violently struck [her] on and about various parts of her body with great force and violence, pulled [her] from her car, pushed and shoved [her]

9

and knocked [her] to the ground."[62] Judge Jones granted summary judgment to State Farm, finding the policyholder's alleged conduct did not constitute an "accident" triggering coverage under the policy.[63] "There is no factual allegation that suggests Scalia's actions were unintentional or fortuitous," Judge Jones found.[64] The victim's complaint, he held, "ultimately makes out a claim for the intentional tort of assault and battery, which inherently does not suggest an accident."[65]

In *State Farm Fire & Casualty Co. v. Jackson*, State Farm sought and obtained a declaratory judgment it had no duty to defend or indemnify its policyholder in an underlying action alleging its policyholder assaulted and battered a man at a pub.[66] Judge Goldberg examined the underlying complaint, which alleged a negligence claim against the pub but only an assault and battery claim against the policyholder, and found it contained "no allegations of negligence against [the policyholder]" and "do[es] not describe any type of 'accident' involving [the policyholder]."[67]

State Farm argues although this issue is rarely litigated in the context of cyberbullying, the Pennsylvania Court of Common Pleas encountered a sufficiently analogous set of facts in *Erie Insurance Exchange v. Ruff*, in which the court held a second-grade boy's acts of physical and verbal harassment of female classmates was not an accident triggering insurance coverage.[68] In *Ruff*, a group of second grade boys—including Brenda Jackson's minor son, K.J.—"engaged in harassing behavior upon Minor Plaintiff, K.R.[,] including grabbing her buttocks, breast area, making sexually suggestive comments, exposing their genitals and making other inappropriate comments."[69] The boys "also subjected [K.R.] to violence and on one occasion [she] was held on the ground by several boys when one boy attempted to kiss her."[70] Such acts "occurred almost daily and similar acts were visited upon as many as four other girls."[71]

K.R.'s parents sued Brenda Jackson and her minor son, K.J. Two of the counts in the underlying complaint described the son's conduct as "negligent."[72] Judge Ackerman nonetheless

10

found the conduct similar enough to the assault in *Gene's Restaurant, Inc.* to conclude the minor boy's "conduct was not an 'accident' and, therefore, was not an 'occurrence' that would trigger coverage under the [insurance] policy."[73] Judge Ackerman, citing *Gene's Restaurant, Inc.*, explained "[w]here a policy defines an 'occurrence' as an 'accident,' a willful and malicious assault is not an 'occurrence' requiring coverage."[74] The boys' conduct, "albeit not as severe as that ascribed to the adult in [*Gene's Restaurant, Inc.*], is nonetheless still an assault, still willful, and still malicious, in that even a child in elementary school knows what actions will agitate and disturb his peers."[75]

Zach Trimbur distinguishes *Ruff*. He argues the case is of limited relevance because it lacks an intervening event analogous to Julia Morath's death by suicide. The distinction is apt, because in *Ruff*—as in *Gene's Restaurant*, *Scalia*, and *Jackson*—the boys inflicted the physical harm directly upon the victim and there existed no evidence of third party action. Julia Morath's parents allege a different chain of causation. They allege Zach Trimbur harassed and bullied their daughter, which rendered her so emotionally distraught she inflicted bodily injury upon herself. The simple assault cases and *Ruff* are ill-suited to this more complex chain of alleged causation.

### 3. Pennsylvania authority considering third-party conduct in the context of the duty to defend provides more persuasive guidance.

Outside the categories of faulty workmanship and simple assaults, courts applying Pennsylvania law consider the foreseeability of the resulting injury, even in cases in which the bodily injury is indisputably caused by an intentional act. The Pennsylvania Supreme Court embraced this principle decades ago in *Mohn v. American Casualty Co.*, holding the bodily injuries to the insured's son "were sustained as a result of accidental bodily injury within the terms of the policy"[76] even though police shot him while "attempting to flee from the scene of a burglary he was in the process of committing."[77] The Pennsylvania Supreme Court held "the fact that the

11

event causing the injury may be traceable to an intentional act of a third party does not preclude the occurrence from being an 'accident,'" and "[t]hus, the test of whether injury is a result of an accident is to be determined from the viewpoint of the insured and not from the viewpoint of the one that committed the act causing the injury."[78]

Our Court of Appeals applied this principle in *Nationwide v. Pipher*, holding allegations the insured's negligence contributed to an individual's murder by a third party trigger the insurer's duty to defend.[79] In *Pipher*, Linda Pipher (the insured) owned a multi-unit dwelling which she insured with Nationwide.[80] Ms. Pipher or her parents (the previous owners) had "removed the doors to the second floor apartment of the property in order to install new carpeting," but never reinstalled them.[81] A few months after leasing the second floor apartment to Francis and Bernine McFadden, a painter Linda Pipher hired to paint the McFadden's apartment killed Bernine McFadden.[82] Francis McFadden commenced a state survival action in Pennsylvania court for wrongful death against Linda Pipher and her parents, the painter, and others.[83] Nationwide defended Pipher subject to a reservation of rights and filed a declaratory judgment action in our court seeking "a declaration that it has no duty to defend and indemnify Pipher because Bernine McFadden's death was caused by an intentional assault and murder committed by Wood, and thus her death was not an insured 'occurrence' as defined in the policy."[84]

Pipher appealed from Judge Weiner's grant of summary judgment to Nationwide. Nationwide, relying on the Pennsylvania Supreme Court's decision in *Gene's Restaurant*, argued on appeal "the court must focus on the nature of the act which inflicted the injury or directly caused the death, and that act must be unintentional, even when an insured is sued for negligently failing to prevent or for contributing to the harmful intentional acts of the person who directly inflicted the injury or caused the death."[85] Our Court of Appeals described Nationwide's argument as

12

"premised on a misreading of *Gene's Restaurant*."[86]   The complaint in *Gene's Restaurant* "alleged *solely* an intentional act and contained *no* allegations of negligence on the part of its insured," and the Pennsylvania Supreme Court in the case therefore "came to the unremarkable conclusion that an intentional tort was not an accident and thus not a covered occurrence under the policy."[87]   Our Court of Appeals described "[t]he present suit against Pipher [as] clearly distinguishable from *Gene's Restaurant*:"[88]

> Here, the plaintiff's complaint raises numerous allegations of negligence on the part of Pipher, which allegedly contributed to Bernine McFadden's death. In this case, the plaintiff alleges that, among other things, Pipher "*negligently* fail[ed] to re-install the apartment doors necessary for the tenant's security;" "*negligently* failed to provide a reasonably safe premises for the tenants;" and "*negligently* hired Ian S. Wood to paint the second floor apartment." Although Bernine McFadden's death was the direct result of a third party's intentional conduct, the complaint alleges that the insured's own negligence also played a significant part in her death. In the absence of any Pennsylvania Supreme Court precedent directly on point, we believe that if confronted with this question, that court would find this distinction alone to be sufficient to hold that an insurance company has a duty to defend its insured against complaints alleging negligent conduct on the part of the insured as well as a third party's intentional conduct.[89]

The Pennsylvania Supreme Court further endorsed this line of reasoning in *Donegal Mutual Insurance Company v. Baumhammers*, holding an insurer must defend parents against claims their negligence contributed to the victims' death or injury by shooting at the hands of their son. In *Donegal*, Richard Baumhammers, an adult residing at the home of his parents, left his family's home on April 28, 2000 and commenced a shooting spree lasting two hours in which he killed five individuals and inflicted serious bodily injury upon a sixth.[90]   A Pennsylvania jury convicted Richard Baumhammers of first degree murder of the five victims who died, and aggravated assault and attempted homicide of the individual who suffered bodily injury.[91]   The surviving victims and the representatives of the estates of the deceased victims sued Richard Baumhammers and his parents in Pennsylvania court "alleg[ing] the following omissions by

13

[Richard Baumhammers's] [p]arents: "(1) failure to procure adequate mental health treatment for Baumhammers, (2) failure to take Baumhammers['s] handgun away from him, and (3) failure to notify the appropriate authorities of the fact that Baumhammers possessed a handgun."[92]

The trial court held Donegal had no duty to defend Richard Baumhammers but held the company did have a duty to defend and indemnify his parents.[93] The Pennsylvania Superior Court, *en banc*, held Donegal had to provide coverage to the parents.[94] The Pennsylvania Supreme Court agreed the company had to defend the parents and distinguished *Gene's Restaurant*. The court held "[w]hile Donegal is correct that intentional conduct may not qualify as 'accidental,' the complaint in the instant case contains allegations of negligence on the part of the insured."[95] The court held an insurer is not absolved "of the duty to defend its insured when the complaint filed against the insured alleges that the intentional conduct of a third party was enabled by the negligence of the insured," and therefore "our holding in *Gene's Restaurant* is not dispositive."[96] The court found applicable our Court of Appeals' analysis in *Pipher*. Applying those principles to the underlying allegations, the court held "[t]he extraordinary shooting spree embarked upon by Baumhammers resulting in injuries to Plaintiffs cannot be said to be the natural and expected result of Parents' alleged acts of negligence. Rather, Plaintiffs' injuries were caused by an event so unexpected, undesigned and fortuitous as to qualify as accidental within the terms of the policy."[97]

The Pennsylvania Superior Court's recent decision in *Erie Insurance Exchange v. Moore* is similarly illustrative of the principle acts resulting in unintended bodily injury may constitute an occurrence. In *Moore*, the insurer sought a declaratory judgment it had no duty to defend its insured in a bodily injury claim arising out of a pre-planned murder-suicide. The insured went to his ex-wife's home to kill her and then commit suicide, but the ex-wife's boyfriend—the plaintiff

14

in the underlying personal injury action—"arrived unexpectedly at the home, struggled with [the insured], and was seriously injured by shots fired from [the insured]'s gun."[98] The Pennsylvania Superior Court concluded "an occurrence" triggered the insurer's duty to defend its insured. "These allegations . . . set forth a claim that [the insured] accidentally shot [the boyfriend] while he waived around his gun during their struggle. They allege a chaotic brawl in which [insured] fired his gun wildly while trying to fight [the boyfriend] off. The alleged events fit the Policies' definitions of a covered 'occurrence,' rather than conduct deliberately intended to inflict harm."[99] The court added, "[t]he allegations make clear that [the insured] went to his former wife's home to kill her and himself—not [the boyfriend]; indeed, they make clear that [the boyfriend]'s arrival at the home was totally unplanned and unexpected."[100]

The reasoned analysis in *Mohn*, *Pipher*, *Donegal*, and *Moore* lead us to conclude State Farm must defend Zach Trimbur. Contrary to State Farm's view, we see in these cases no bar to our consideration of the totality of the occurrence—to the contrary, these cases compel it. When properly focused on the entire occurrence, we find particularly material the fact Julia Morath, not Zach Trimbur, inflicted the only alleged bodily injury in this case.

In *Gene's Restaurant*, *Scalia*, *Jackson*, and *Ruff*, the insured inflicted the harm directly upon the victim; there is no intervening injurious event. Our case is different. The reasoning in *Mohn*, *Pipher*, *Donegal*, and *Moore* better capture the nuanced chain of causation alleged by the Moraths. In each of those cases, the court held the insurer had to defend the insured because the underlying events were fortuitous from the perspective of the insured.

We also find material, as our Court of Appeals did in *Pipher*, the Moraths allege a negligence theory against the Trimbur boy. Though the underlying complaint uses the words "harassment," "bullying," and "intentional," the Moraths allege not a single intentional tort against

15

the Trimbur boy. Our Court of Appeals explicitly distinguished *Gene's Restaurant* on this very ground in *Pipher*, holding the insurer had a duty to defend where the insured's negligence allegedly contributed to the victim's death at the hands of an individual who was not the insured.[101] We express no opinion on whether we would reach a different outcome if the Moraths alleged only a claim for intentional infliction of emotional distress.

Viewing these events from Zach Trimbur's perspective, we cannot conclusively find death by suicide is foreseeable from his cyberbullying, and Pennsylvania law appears to prohibit such a sweeping conclusion. Absent limited exceptions not applicable here, "it is a general rule in Pennsylvania that suicide—or attempted suicide—is not a recognized basis for recovery in a tort claim."[102] Pennsylvania follows such a rule "because suicide constitutes an independent intervening act *so extraordinary as not to have been reasonably foreseeable by the original tortfeasor*."[103] State Farm, without citing any authority for the proposition, nonetheless argues this line of authority should not apply here. We see no reason to disregard Pennsylvania courts' clear statement, and, moreover, we decline to prejudge a question resting at the heart of the underlying merits claims in Pennsylvania court. The Moraths's negligence claim falls within the scope of the policy. [104]

We reach this conclusion mindful of a tragedy too common among our high school students arising from cyberbullying. In applying Pennsylvania law, we do not reward the Trimbur boy's text message. The issue is close particularly given the Trimbur boy's reference to self-harm and his apparent appreciation of some level of Julia Morath's struggles with mental illness. But the culpability of the Trimbur boy is not before us today. Such questions will be resolved in the Pennsylvania court. We are reviewing the four corners of the Policy and the Moraths's state court complaint. We hold State Farm must defend him in state court. Depending on the results of the

16

state court case, we may face a different question on State Farm's duty to indemnify the Trimbur boy.

## III. Conclusion

An insurer and its insured each ask whether the insurer's duty to defend extends to defending a negligence claim brought against an insured teenage boy cyberbullying a teenage girl allegedly leading to her death by suicide. The girl's parents sue the teenage boy for negligence in state court and the boy now asks the insurer to provide him a defense under his mom's home insurance policy. The teenage boy may have intended to insult a classmate and possibly cause her emotional distress. But, from the insured boy's perspective, his classmate's death by suicide is an accident.

State Farm must defend Zach Trimbur in the underlying litigation. In the accompanying Order, we grant Zach Trimbur's motion for judgment on the pleadings on the duty to defend and deny State Farm's motion for judgment on the pleadings or summary judgment. We do not today address whether State Farm has any duty to indemnify Zach Trimbur.

---

[1]We base our fact account on the allegations in the operative underlying complaint, "because an insurer's duty to defend an action against its insured is initially measured on the basis of the allegations of the pleadings in the complaint against the insured." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 108 n.3 (3d Cir. 2009). We also draw on the parties' statements of undisputed material facts for necessary context.

[2] ECF Doc. No. 14-5 at ¶ 17.

[3] *Id.* at ¶ 18.

[4] *Id.* at ¶ 19.

[5] *Id.* at ¶ 19.

[6] *Id.* at ¶ 28.

17

[7] *Id.* at ¶ 29.

[8] *Id.* at ¶ 30.

[9] *Id.* at ¶ 31.

[10] *Id.* at ¶ 34.

[11] *Id.* at ¶ 35.

[12] *Id.* at ¶ 3.

[13] *Id.* at ¶ 4.

[14] *Id.* at ¶¶ 38–57.

[15] *See* ECF Doc. No. 14-2 at ¶ 5; ECF Doc. No. 14-9 at 1–42 (Certified Copy of State Farm Fire and Casualty Company's Homeowners Policy Issued to Stephanie Motta, Policy No. 78-BJ-G772-7). We refer to Ms. Motta's homeowners policy as the "Policy."

[16] *See* ECF Doc. No. 1 at ¶ 17 ("State Farm is defending Trimbur under a full and complete reservation of rights."); *id.* at pages 57–64 (reservation of rights letters to Zachary Trimbur and Stephanie Motta). The parties agree their dispute is limited to State Farm's duty to defend Zach Trimbur. The parties do not dispute Zach Trimbur's father resided at his own address and is therefore not an "insured" on the Policy. They also agree State Farm must defend Stephanie Motta, as State Farm concedes from the mother's perspective there occurred an "accident" triggering coverage. Zach Trimbur's mother and father, State Farm clarifies, are named in this declaratory judgment action solely in their capacity as parents and legal guardians of their minor son, Zach.

[17] ECF Doc. No. 1.

[18] *Id.* at ¶¶ 59, 61.

[19] ECF Doc. No. 9.

[20] A party may move for judgment "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). In so doing, "the moving party must show that no issues of material fact exist and that judgment should be entered in its favor as a matter of law." *Collinson v. City of Philadelphia,* No. 12-6114, 2015 WL 221070, at *1 (E.D. Pa. Jan. 14, 2015) (quoting *S.B. v. United of Omaha Life Ins. Co.*, No. 13–1463, 2013 WL 2915973, at *3 (E.D.Pa. June 13, 2013)). The standard applied to motions under Rule 12(c) is the same standard as applied to motions to dismiss under Rule 12(b)(6). *Szczurek v. Prof'l Mgmt., Inc.,* No. 14-4790, 2014 WL 6388484, at *1 (E.D. Pa. Nov. 17, 2014). A Rule 12(c) motion "should not be granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 271 (3d Cir. 2014) (internal quotations and citations omitted).

[21] Our policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. State Farm filed its SUMF at ECF Doc. No. 14-2. The table of contents to State Farm's appendix is filed at ECF Doc. No.14-4; the documents to which the appendix refers are filed at ECF Doc. Nos. 14-5 through 14-9. Zach Trimbur's response to State Farm's SUMF are filed at ECF Doc. No. 17-1.

[22] *See Lebanon Sch. Dist. v. Netherlands Ins. Co.*, No. 12-988, 2013 WL 308702, at \*2 (M.D. Pa. Jan. 25, 2013).

[23] *Id.*

[24] *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (citation and internal quotation marks omitted).

[25] *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016).

[26] *Id.* ("Pennsylvania adheres to the 'four corners' rule (also known as the 'eight corners' rule), under which an insurer's potential duty to defend is 'determined *solely* by the allegations of the complaint in the [underlying] action.'") (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 908 A.2d 888, 896 (Pa. 2006)).

[27] *Frog, Switch & Mfg. Co.*, 193 F.3d at 746; *see also Nationwide Mut. Fire Co. v. Shank*, 951 F. Supp. 68, 71 (E.D. Pa. 1997) ("[W]e need only identify one claim in the underlying complaint which could be covered by the insurance policy to find that Nationwide has a subsequent duty to defend the Shanks.").

[28] *Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 692 (E.D. Pa. 2012).

[29] ECF Doc. No. 14-9 at 25 (emphasis added).

[30] *Id.* at 36 (emphasis added).

[31] *Id.* at 36.

[32] *Id.* at 11.

[33] *Id.* Though not relevant here today, the Policy also excludes other events from the definition "bodily injury."

[34] *Id.* at 12.

[35] ECF Doc. No. 14-5 at ¶ 40.

[36] *Id.* at ¶ 49.

[37] *Id.* at ¶ 53.

[38] *Id.* at ¶ 56.

[39] ECF Doc. No. 20-2 at 5.

[40] *Kvaerner*, 908 A.2d at 899.

[41] *Id.* at 891 (internal quotation marks omitted).

[42] *Id.* (internal quotation marks omitted).

[43] *Id.* at 891–92.

[44] *Id.* at 892.

[45] *Id.* at 893.

[46] *Id.* at 894.

[47] *Id.* at 896.

[48] *Id.* at 897.

[49] *Id.* at 897–98.

[50] *Id.* at 898.

[51] *Id.*

[52] *Id.* at 899.

[53] 941 A.2d 706 (Pa. Super. 2007).

[54] *Id.* at 713.

[55] *Id.*

[56] *Id.*

[57] ECF Doc. No. 20-2 at 6.

[58] 548 A.2d 246 (Pa. 1988).

[59] *Id.* at 246.

[60] *Id.* at 247.

[61] *Id.*

[62] *State Farm Fire & Cas. Co. v. Scalia*, No. 14-49, 2014 WL 6982926, at *2 (M.D. Pa. Dec. 9, 2014) (citation and internal quotation marks omitted).

[63] *Id.* at *7–8.

[64] *Id.* at *7.

[65] *Id.*

[66] *State Farm Fire & Cas. Co. v. Jackson*, No. 18-102, 2018 WL 4006351, at *1 (E.D. Pa. Aug. 22, 2018).

[67] *Id.* at *4.

[68] *Erie Ins. Exch. v. Ruff*, No. 4605 of 2006, 2007 Pa. Dist. & Cnty. Dec. LEXIS 140, *3-4 (Westmoreland County Ct. Com. Pl. Apr. 25, 2007).

[69] *Id.* at *1–2 (citation and internal quotation marks omitted).

[70] *Id.* at *2 (citation and internal quotation marks omitted).

[71] *Id.*

[72] *Id.*

[73] *Id.* at *4.

[74] *Id.* at *3.

[75] *Id.* at *4.

[76] *Mohn v. Am. Cas. Co. of Reading*, 326 A.2d 346, 352 (Pa. 1974).

[77] *Id.* at 347.

[78] *Id.* at 348.

[79] *Nationwide Mut. Fire Ins. Co. of Columbus v. Pipher*, 140 F.3d 222, 224–28 (3d Cir. 1998).

[80] *Id.* at 223.

[81] *Id.*

[82] *Id.* at 223–24.

[83] *Id.* at 224.

[84] *Id.*

[85] *Id.*

[86] *Id.* at 225.

[87] *Id.*

[88] *Id.*

[89] *Id.*

[90] *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 288 (Pa. 2007).

[91] *Id.*

[92] *Id.* at 288–89.

[93] *Id.* at 290.

[94] *Id.*

[95] *Id.* at 291.

[96] *Id.*

[97] *Id.* at 293.

[98] *Erie Ins. Exch. v. Moore*, 175 A.3d 999, 1001 (Pa. Super. 2017), *reargument denied* (Jan. 24, 2018), *appeal granted*, 189 A.3d 382 (Pa. 2018). We are mindful the appeal in *Moore* is pending before the Pennsylvania Supreme Court. Consistent with our duty to assess how Pennsylvania courts would apply Pennsylvania law to this case, however, we consider and apply *Moore* but do not rely exclusively upon it in reaching today's decision.

[99] *Id.* at 1011.

[100] *Id.* at 1012.

[101] *See Pipher*, 140 F.3d at 225.

[102] *Ferris v. Cleaveland*, No. 10-1302, 2012 WL 2564782, at *1 (M.D. Pa. July 2, 2012). There are limited "circumstances, generally related to mental health professionals and workers compensation statutes, in which liability [for a suicide] may attach when an additional duty exists." *Id.* Because Pennsylvania law acknowledges this exception relating to workers compensation

claims, we do not rely on our Court of Appeals' decision in *Federal Rice Drug Company v. Queen Insurance Company of America*, 463 F.2d 626 (3d Cir. 1972), which no party cites. In *Queen Insurance*, Gerson N. Rogow, an employee of the insured, Federal Rice Drug Company, committed suicide in his employer's place of business. *Id.* at 627. Mr. Rogow's death by suicide "follow[ed] a long series of disputes with his superior over his job performance." *Id.* In the underlying suit Mr. Rogow's estate initiated in state court, the estate alleged "the president of the insured, acting in that capacity and within the scope of his employment began a course of criticizing, embarrassing, harassing and humiliating the decedent, alone and in front of business associates, friends, and subordinates, and of placing decedent in situations calculated to create great emotional distress, for the ultimate purpose of forcing decedent to relinquish his employment with the insured." *Id.* The estate alleged the conduct "caused decedent to suffer great emotional and physical stress, which prevented him from realizing the nature of his actions, made it impossible to resist an impulse created by an insanity, deprived him of capacity to govern his conduct, and caused decedent to commit suicide." *Id.* Mr. Rogow's estate alleged his death resulted directly and proximately from "the intentional, willful, wanton and/or negligent conduct of the insured." *Id.* at 627–28. The insurer, however, "refused to defend or to indemnify" the company. *Id.* at 628. On appeal of the federal action in which the company alleged wrongful denial of coverage against its insurer after settling the underlying claim against the company, our Court of Appeals applied an exclusion of the parties' policy providing there would be no coverage for claims cognizable under Pennsylvania's Workmen's Compensation Statute. As relevant here, the Workmen's Compensation Statute "covers only injuries by an accident, in the course of his employment." *Id.* at 630 (citation and internal quotation marks omitted). Our Court of Appeals found there to be no "accident." Our Court of Appeals explained "[t]he complaint of decedent's estate alleges no more than that by purely verbal harassment in the course of decedent's employment his employer caused stress which resulted in an emotional condition resulting in an insane suicide. We do not believe that the Pennsylvania courts would hold the resulting death to be compensable under that State's Workmen's Compensation Statute, for although it arose out of employment it did not result from an accident." *Id.* at 631.

[103] *McPeake v. William T. Cannon, Esquire, P.C.*, 553 A.2d 439, 441 (1989) (emphasis added).

[104] State Farm raises two other points which do not alter our analysis. State Farm argues insurers previously defined "occurrence" in a way to account for the foreseeability of the result of the conduct from the perspective of the insured. *See* ECF Doc. No. 20-2 at 6-8. State Farm argues industry practice has changed, and insurers now account for the concept of foreseeability in the intentional acts exclusion, a more modern policy development. While this may be true as a matter of industry practice, we do not view this distinction as material to the analysis Pennsylvania courts employ when interpreting the common meaning of the term "accident," which is grounded in a focus on fortuity. State Farm also cautions us against relying on the line of authority considering whether an insured's intoxicated conduct constituted an "occurrence." We do not rely on this line of authority here and express no opinion on the merits of this argument.

23